IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LESLIE HILTABRAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-4383 |
| | § | |
| DIRECT ENERGY, LP, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 17). The court has considered the motion, the responses and replies thereto, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED IN PART, DENIED IN PART**.

**I.  Case Background**

Plaintiff Leslie Hiltabrand ("Plaintiff") brought this lawsuit against her former employer, Direct Energy, LP ("Defendant" or "Direct Energy"), alleging violations of the Family Medical Leave Act[2] ("FMLA"), Americans with Disabilities Act[3] ("ADA"), and Employee Retirement Income Security Act[4] ("ERISA") arising from her

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 26.

[2]    29 U.S.C. §§ 2601-2654.

[3]    42 U.S.C. §§ 12101-12213.

[4]    29 U.S.C. § 1001 et. seq.

termination.

## A. __Factual History__

Plaintiff, who had previous work experience in communications and public relations dating back to 1999, was hired by Direct Energy on a contract basis in February 2010.[5]   Direct Energy contracted Plaintiff to fill the role of an employee who was on maternity leave.[6]   Because of her background in communications, Plaintiff was tasked with setting up Direct Energy's internal communications structure for the residential division of the company.[7]  During this period of contractual employment, Plaintiff reported to Ben Lenton ("Lenton"), a member of Direct Energy's Human Resources ("HR") department.[8]   A few months later, on or around June 10, 2010, Plaintiff accepted permanent employment with Direct Energy in the position of Manager, Internal Communications ("IC") for Direct Energy Residential.[9]  As IC Manager, Plaintiff reported to Jennifer Wallace.[10]

That same summer, Plaintiff's position was changed to that of

---

[5]     __See__ Doc. 17-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 19; Doc. 31-1, Ex. A-2 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s Resume.

[6]     __See__ Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. p. 45.

[7]     __See__ Doc. 17-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 19.

[8]     __See__ Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. p. 46.

[9]     __See__ Doc. 17-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 23.

[10]     __See__ __id.__

2

Manager of Brand Engagement.[11]   Plaintiff reported to and was directly supervised by Lisa Frizzell ("Frizzell") after she became Manager of Brand Engagement.[12]   In October 2010, Direct Energy carried out a fifteen percent "forced reduction in the marketing communications area," of which Plaintiff's position was a part.[13] Also in October 2010, Plaintiff began seeing "crescent-shaped flashes of light at random times" out of her left eye.[14]   Within a week of noticing these flashes, Plaintiff underwent surgery on her left eye for a detached retina.[15]   In a letter dated October 27, 2010, Direct Energy notified Plaintiff that, due to restructuring, Plaintiff's role as Manager of Brand Management would become redundant on December 31, 2010.[16]   The letter indicated that Plaintiff could participate in the "Redeployment process," wherein Direct Energy would "make a reasonable effort, wherever practical, in finding you [Plaintiff] another suitable position within the company."[17]

Around the same time, Plaintiff received a call from Frizzell

---

[11]   See Doc. 31-5, Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 25-27.

[12]   See id. p. 25.

[13]   Id. p. 30.

[14]   Id. p. 65.

[15]   See id. pp. 63-65.

[16]   See id. p. 30; Doc. 31-4, Ex. 26 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Letter Dated Oct. 27, 2010.

[17]   Doc. 31-4, Ex. 26 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Letter Dated Oct. 27, 2010.

and Pam Duplantis ("Duplantis") informing her that she was being placed on redeployment.[18]  At the time Plaintiff received this call, she was working from home while she recuperated from her surgery, the post-operative medical instructions of which required her to lie face down for three weeks.[19]  Direct Energy's Chief Marketing Officer, Andrew Reaney ("Reaney"), contacted Plaintiff shortly thereafter and encouraged Plaintiff to apply for the position of IC Manager since the current IC Manager was resigning.[20]  In accordance with Reaney's advice, Plaintiff applied for the IC Manager position.[21]  Plaintiff was selected for the position by Lenton.[22]

In a confidential letter dated November 19, 2010, Lenton notified Plaintiff that her position as IC Manager would be effective on December 1, 2010.[23]  The letter further informed Plaintiff of the following: "It is understood that this role [IC Manager] will end on Friday July 1, 2011, unless extended in writing.  At this time, the role will be evaluated and may become permanent, however this should not be assumed."[24]  Plaintiff was

---

[18]     See Doc. 31-5, Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 31.

[19]     See id. p. 33.

[20]     See id. pp. 34-35.

[21]     See id. p. 35.

[22]     See Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. pp. 50-53.

[23]     See Doc. 17-1, Ex. A-2 to Def.'s Mot. for Summ. J., Letter Dated Nov. 19, 2010.

[24]     Id.

4

also notified that, in her capacity as IC Manager, she would report to Lenton.[25]  In response to this letter, Plaintiff emailed Lenton to request that she be provided with at least thirty days notice if her position as IC Manager was going to be eliminated.[26]  Lenton notified Plaintiff that the November 19 letter served as six months notice to Plaintiff, and that he would schedule a time to speak with Plaintiff on June 1, 2011, concerning the status of the IC Manager position.[27]

Plaintiff reported to Lenton from December 1, 2010, through March 1, 2011, after which date Plaintiff reported to Andrea Coughlin-Rowley ("Coughlin-Rowley"), Direct Energy Residential's Vice President of Human Resources.[28]  On at least four occasions between December 22, 2010, and May 11, 2011, Plaintiff requested and received time off from work to attend doctor appointments concerning her detached retina, which the October 2010 surgery had failed to fully remedy.[29]  Because of her detached retina, Plaintiff sometimes wore an eyepatch or bandage over her left eye on the job;

---

[25]  See id.

[26]  See Doc. 17-1, Ex. A-3 to Def.'s Mot. for Summ. J., Email from Pl. to Lenton Dated Nov. 19, 2010.

[27]  See Doc. 17-1, Ex. A-3 to Def.'s Mot. for Summ. J., Email from Lenton to Pl. Dated Nov. 19, 2010; Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. p. 71.

[28]  See Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. pp. 51-52, 56; Doc. A to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 51.

[29]  See Doc. 31-7, Ex. D to Pl.'s Resp. to Def.'s Mot. for Summ. J., Andrea Coughlin-Rowley's Dep. pp. 139-45; Docs. 31-2, 31-4, Exhs. 20, 21, 22, 23, 24, Pl.'s Notifications of Doctor Appts.

both Lenton and Coughlin-Rowley were aware that Plaintiff covered her eye with an eyepatch or bandage.[30]  At Plaintiff's request and to address Plaintiff's eye issues, Direct Energy supplied her with a larger computer monitor, permitted her to work from home, and allowed her to leave work early.[31]

On May 23, 2011, in response to an email from a coworker regarding Plaintiff's employment status, Plaintiff referenced Lenton's intention to speak with her on June 1, 2011, and stated that June 1, 2011, was "30 days prior to possible termination."[32] On May 31, 2011, Coughlin-Rowley emailed Lenton and Laurie Atkinson ("Atkinson"), a communications director, to inquire about the expiration of Plaintiff's employment contract.[33]  Atkinson responded that, based on "informal check-ins with [Plaintiff], I believe [Plaintiff's] contract expires end [sic] of June."[34]  No meeting regarding Plaintiff's employment status took place on June 1, 2011.[35]

---

[30]   See Doc. 31-7, Ex. D to Pl.'s Resp. to Def.'s Mot. for Summ. J., Andrea Coughlin-Rowley's Dep. p. 151; Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. p. 73; Doc. 31-4, Ex. E to Pl.'s Resp. to Def.'s Mot. for Summ. J., Kristin Johnson's Dep. pp. 28-29.

[31]   See Doc. 17-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 67.

[32]   Doc. 17-1, Ex. A-7 to Def.'s Mot. for Summ. J., Email Exchange Dated May 23, 2011.

[33]   See Doc. 17-2, Ex. B-10 to Def.'s Mot. for Summ. J., Email Exchange Dated May 31, 2011.

[34]   Id.

[35]   See Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. p. 71.

In an email to Coughlin-Rowley dated June 6, 2011, Plaintiff stated that she was undergoing a minor eye surgery on June 20, 2011, and that she would be on vacation from June 30, 2011, through July 8, 2011.[36]  Plaintiff further stated that she had an invasive eye surgery scheduled for July 11, 2011, the recovery for which required her to lie face down for two to three weeks.[37]  The day after receiving Plaintiff's email, Coughlin-Rowley contacted Atkinson and recommended that Plaintiff's employment be terminated as of July 1, 2011, in accordance with the confidential letter from November 19, 2010.[38]  Coughlin-Rowley and Kristin Johnson, an HR representative, met with Plaintiff on June 9, 2011, to inform Plaintiff that her employment was to end on July 1, 2011.[39] Plaintiff left work for the rest of the day and, at her request, was permitted to work from home for the remaining duration of her employment.[40]   Plaintiff's role as IC Manager was subsequently

---

[36]     See Doc. 31-2, Ex. 11 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email Dated June 6, 2011.

[37]     See id.

[38]     See Doc. 31-2, Ex. 10 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email Dated June 7, 2011.

[39]     See Doc. 17-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 114; Doc. 17-2, Ex. B to Def.'s Mot. for Summ. J., Andrea Coughlin-Rowley's Dep. p. 103.

[40]     See Doc. 17-1, Ex. A to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 80; Doc. 31-4, Ex. E to Pl.'s Resp. to Def.'s Mot. for Summ. J., Kristin Johnson's Dep. pp. 33-35.

filled by Leslie O'Donnell ("O'Donnell") in September 2011.[41]

## B.  Procedural History

Following her termination from Direct Energy, Plaintiff filed a charge of disability and age discrimination with the Equal Employment Opportunity Commission ("EEOC").[42]  Plaintiff timely filed her action in this court on December 13, 2011, alleging violations of the FMLA and ERISA.[43]  About three weeks later, on January 2, 2012, Plaintiff filed an amended complaint, adding a claim for violations of the ADA.[44]

Over a year later, on February 4, 2013, Defendant filed the pending motion for summary judgment.[45]  Plaintiff filed a response to Defendant's summary judgment motion on March 11, 2013.[46]  In her response to Defendant's pending motion, Plaintiff voluntarily dismissed her ERISA claims, leaving the FMLA and ADA claims as the surviving claims in this action.[47]  Defendant filed a reply in support of summary judgment ten days later, on March 21, 2013, to

---

[41]    See Doc. 31-7, Ex. D to Def.'s Mot. for Summ. J., Andrea Coughlin-Rowley's Dep. p. 122; Doc. 31-2, Ex. 18 to Def.'s Mot. for Summ. J., Leslie O'Donnell's Resume.

[42]    See Doc. 1, Pl.'s Orig. Compl., p. 6 n.1; Doc. 17, Def.'s Mot. for Summ. J., p. 2.

[43]    See Doc. 1, Pl.'s Orig. Compl.

[44]    See Doc. 3, Pl.'s 1st Am. Compl.; Doc. 5, Def.'s Ans. to Pl.'s 1st Am. Compl.

[45]    See Doc. 17, Def.'s Mot. for Summ. J.

[46]    See Doc. 31, Pl.'s Resp. to Def.'s Mot. for Summ. J.

[47]    See id. p. 6 n.1.

8

which Plaintiff filed a surreply on April 2, 2013.[48]  Defendant responded to Plaintiff's surreply on April 9, 2013.[49]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex

---

[48]    See Doc. 32, Def.'s Reply in Supp. of Mot. for Summ. J.; Doc. 33, Pl.'s Surreply to Def.'s Mot. for Summ. J.

[49]    See Doc. 34, Def.'s Resp. to Pl.'s Surreply to Def.'s Mot. for Summ. J.

Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson,

286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.

### III.  Analysis

Defendant moves for summary judgment on Plaintiff's claims of FMLA retaliation and ADA discrimination.[50]  The court turns to the merits of Defendant's motion.

### A.  FMLA Claim

#### 1.  Applicable Law

The FMLA provides employees with both prescriptive and proscriptive rights.  <u>Haley v. Alliance Compressor LLC</u>, 391 F.3d 644, 649 (5th Cir. 2004).  Among an employee's prescriptive, or substantive, FMLA rights are the requirements that the employer grant an eligible employee twelve weeks of leave for an FMLA-qualifying reason, including "a serious health condition that makes the employee unable to perform the functions of [her] position," and that the employer reinstate the employee, upon return from a qualifying absence, to her former position or to an equivalent one.  29 U.S.C. §§ 2614(a)(1), 2612(a)(1)(D); <u>Haley</u>, 391 F.3d at 649.  A

---

[50]    Defendant also moved for summary judgment on Plaintiff's ERISA discrimination claim.  As noted above, however, Plaintiff voluntarily dismissed her ERISA claim, thereby rendering Defendant's motion on this claim **MOOT.**

serious health condition is "an illness, injury, impairment, or physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). If these entitlements are violated, an employee may bring entitlement or interference claims under 29 U.S.C. § 2615(a)(1). In order to establish entitlement to these FMLA prescriptive rights, the plaintiff must prove that she was an eligible employee, that her employer interfered with, restrained, or denied her exercise of FMLA rights, and that she was prejudiced by the violation. 29 U.S.C. §§ 2615(a)(1), 2617(a)(1); see also Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002).

The FMLA's second type of protection, its proscriptive rights, prohibits an employer from discriminating or retaliating against an employee who exercises her FMLA rights or who opposes an act made unlawful by the FMLA. 29 U.S.C. § 2615(a); Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005); Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 975 (5th Cir. 1998). The violation of these rights gives rise to an action under 29 U.S.C. § 2615(a)(2) for discrimination and retaliation.

Claims of discrimination and retaliation brought under the FMLA are not significantly different from claims brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[51] or

---

[51]   42 U.S.C. §§ 2000e-2000e-17.

other anti-discrimination laws. Haley, 391 F.3d at 649; Chaffin v. John H. Carter Co., 179 F.3d 316, 319 (5th Cir. 1999). Therefore, in the absence of direct evidence, courts analyze FMLA retaliation claims like Title VII claims, under the "modified McDonnell Douglas approach." Richardson, 434 F.3d at 332; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) (modifying McDonnell Douglas, 411 U.S. 792); Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004) (applying the modified McDonnell Douglas approach to an ADEA claim).

Under this approach, a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. Richardson, 434 F.3d at 332. To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: 1) she engaged in a protected activity under the FMLA; 2) she suffered an adverse employment decision; and 3) causation connects the two. Id.; see also Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir. 2001)(stating that the employee against whom an employer allegedly retaliated for asserting FMLA rights must show that he was protected under the FMLA, he suffered an adverse employment decision, and he either was treated less favorably than those who did not take FMLA leave or was subjected to the adverse decision because he took leave). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer

legitimate, nondiscriminatory reasons for its adverse employment action.  Richardson, 434 F.3d at 332.

If the defendant satisfies this burden, the plaintiff must then offer evidence tending to show "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  Rachid, 376 F.3d at 312 (internal quotation and alteration marks omitted); see also Smith v. Xerox Corp., 602 F.3d 320, 326-27 (5th Cir. 2010); McKenna v. Liberty Mut. Group, Inc., 468 F. App'x 413, 417 (5th Cir. 2012) (analyzing FMLA retaliation claim under the modified approach) (unpublished).   If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory or retaliatory animus.  Rachid, 376 F.3d at 312.

### 2.  Prima Facie Case

Defendant does not challenge Plaintiff's ability to satisfy the first two elements of a prima facie case of retaliation under the FMLA.  Rather, Defendant contends that Plaintiff has failed to satisfy the final element of her prima facie case, namely, a causal connection between Plaintiff's request for FMLA-qualified leave and

14

her termination.

Generally, temporal proximity between a plaintiff's engaging in FMLA-protected activity and suffering an adverse employment action may be sufficient, standing alone, to satisfy the causation element of a prima facie case of FMLA retaliation where such temporal proximity is "very close". See Strong v. Univ. Healthcare System, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) (discussing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).  Cases in the Fifth Circuit have held that lapses shorter than three months between the protected activity and the adverse employment action are sufficient to support an inference of causation in retaliation cases.  See Breeden, 532 U.S. 273-74 (favorably citing cases holding that three- and four-month periods between protected activity and an adverse employment action were insufficient to establish a causal connection); Stroud v. BMC Software, Inc., No. 07-20779, slip op., 2008 WL 2325639, at *5-6 (5th Cir. June 6, 2008) (citing cases).

Here, in support of a causal connection, Plaintiff cites her email dated June 6, 2011, in which Plaintiff informed Coughlin-Rowley that she was scheduled for an eye surgery, the recovery for which required her to lie face down for approximately three weeks. Plaintiff also points to Coughlin-Rowley's email exchange with Atkinson on June 7, 2011, wherein Coughlin-Rowley recommended that Plaintiff's employment be terminated as of July 1, 2011, in

accordance with the anticipated employment end-date contained in the confidential letter to Plaintiff from November 19, 2010. The court further notes that Coughlin-Rowley's June 7 email to Atkinson specifically referenced Plaintiff's intention to undergo the aforementioned surgery in July, as well as Plaintiff's "less than ideal performance."[52] On July 9, 2011, three days after Plaintiff sent an email about her plans for surgery, Coughlin-Rowley attended a meeting with Plaintiff and informed Plaintiff of her termination effective July 1, 2011.

Considering the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff has demonstrated a causal connection between her request for FMLA-qualified leave and her termination, which was discussed with her a mere three days after her FMLA-qualified leave request.[53] Accordingly, Plaintiff has established a prima facie case of retaliation under the FMLA.

### 3. Legitimate, Nonretaliatory Reason

Having determined that Plaintiff satisfied the elements of her prima facie case, the court turns to Defendant's articulated legitimate, nonretaliatory reason for terminating Plaintiff. See Richardson, 434 F.3d at 332. In this case, Defendant asserts that

---

[52]     Doc. 31-2, Ex. 10 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email Dated June 7, 2011.

[53]     Defendant argues that the decision to terminate Plaintiff was made in November 2010 and memorialized in the confidential letter sent to Plaintiff on or around November 19, 2010. The court discusses this argument in greater depth below, in the context of Defendant's proffered reason for terminating Plaintiff and Plaintiff's evidence of pretext.

the decision to terminate Plaintiff's employment on July 1, 2011, was made in November 2010, months prior to Plaintiff's request for FMLA-qualified leave.   In support of this articulated reason, Defendant primarily relies on the contents of the confidential letter dated November 19, 2010.   Defendant has thus satisfied its burden of showing a legitimate, nonretaliatory reason for its conduct.   The court therefore proceeds to the next stage of the McDonnell Douglas burden-shifting scheme.

**4. Pretext**

In order to overcome Defendant's motion for summary judgment as to her FMLA claim, Plaintiff must produce some evidence demonstrating that Defendant's nonretaliatory reason for terminating her is mere pretext or that retaliatory animus also factored into Defendant's conduct. See Gowesky, 321 F.3d at 511; Rachid, 376 F.3d at 312.

Defendant contends that, even assuming Plaintiff could establish a prima facie case of retaliation under the FMLA, Plaintiff has failed to show that Defendant's articulated reason is a pretext for retaliation.   Specifically, Defendant argues that Plaintiff's reliance on the temporal proximity between her request for leave and notice of termination is insufficient to demonstrate pretext.   The court agrees with Defendant's position that "temporal proximity alone is insufficient to prove but for causation." Strong, 482 F.3d at 807-08.   In this case, however, Plaintiff has

17

proffered evidence in addition to the temporal proximity discussed above to satisfy her burden of showing that Defendant's articulated reason for terminating Plaintiff is a pretext for retaliation, or that Defendant's articulated reason, while true, was only one of the reasons for its conduct, another of which was retaliation.

The competent summary judgment evidence before the court shows that Plaintiff was notified in a confidential letter dated November 19, 2010, that her role as IC Manager would run from December 1, 2010, through July 1, 2011, unless it was extended in writing.[54]  The letter also informed Plaintiff that, "At this time [July 1, 2011], the role will be evaluated and may become permanent, however this should not be assumed."[55]  With respect to the language of the letter, Lenton's testimony indicated that it "left open the possibility that [Plaintiff's] role as [IC Manager] could continue after July 1 of 2011."[56]  Additionally, according to Lenton's testimony and Plaintiff's email to a coworker on May 23, 2011, Plaintiff and Lenton planned to meet on June 1, 2011, to discuss the status of  Plaintiff's IC Manager role.

The parties do not dispute that no discussion concerning Plaintiff's role as IC Manager occurred on June 1, 2011, though on

---

[54]     The parties do not dispute that Plaintiff's position as IC Manager was not extended in writing prior to Plaintiff's termination.  Rather, the parties dispute the time that the decision to terminate Plaintiff was made.

[55]     Doc. 17-1, Ex. A-2 to Def.'s Mot. for Summ. J., Letter Dated Nov. 19, 2010.

[56]     Doc. 31-6, Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ben Lenton's Dep. p. 68.

May 31, 2011, Coughlin-Rowley inquired about the end date of Plaintiff's position under the November 2010 letter.  In an email exchange between Coughlin-Rowley and Atkinson on June 7, 2011, the day after Plaintiff notified Coughlin-Rowley of her eye surgery scheduled for July 2011, Coughlin-Rowley remarked that the rationale behind the November 19 employment offer to Plaintiff was that "it didn't make sense to sever [Plaintiff's] employment then and bring her back on as a contractor when she might turn out to be the right person to fill the position on a full time, permanent basis down the road."[57]  The email further noted that, because Plaintiff's performance in the role of IC Manager was less than ideal, Plaintiff was not a "fit for the temporary role."[58]  Coughlin-Rowley then recommended that "we sever [Plaintiff's] employment relationship as anticipated in the initial limited-duration employment agreement [the November 19 letter] (in light of [Plaintiff's] less than ideal performance in the role)."[59]  The court further notes that in response to this email from Coughlin-Rowley and in reference to Plaintiff, Atkinson stated, "I appreciate that, with a solo rep for a function out on leave for an extended period of time, this can be hard on the business."[60]

---

[57]    Doc. 31-2, Ex. 10 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email Dated June 7, 2011.

[58]    Id.

[59]    Id.

[60]    Doc. 31-3, Ex. 8 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email Dated June 8, 2011.

These statements, in conjunction with Lenton's testimony and the plain language of the November 19 confidential letter, suggest that, contrary to Defendant's assertion, Plaintiff's continued role as IC Manager was not definitively slated to end on July 1, 2011. Rather, both Lenton and Coughlin-Rowley indicate that, at the time Plaintiff received the letter in November, the possibility that she would hold the position beyond the July 1, 2011 date remained open. This evidence, in conjunction with the temporal proximity between Plaintiff's notifying Coughlin-Rowley about her surgery and the meeting at which Plaintiff was notified of her impending termination, is sufficient to raise a question of fact as to the legitimacy of Defendant's articulated legitimate, nonretaliatory reason for Plaintiff's termination.

Accordingly, the court finds that Plaintiff has satisfied her burden of showing pretext.  The court therefore **RECOMMENDS** that summary judgment in favor of Defendant be **DENIED** as to Plaintiff's FMLA retaliation claim.

## B.  ADA Claim

### 1.  Applicable Law

The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42

20

U.S.C.A. § 12112(a). The ADA also prohibits employers from retaliating against employees who oppose acts that are unlawful under the ADA and from interfering with the exercise of rights or protections granted by the ADA. 42 U.S.C. § 12203. In the absence of direct evidence of discrimination, ADA claims are analyzed under the modified <u>McDonnell Douglas</u> burden-shifting scheme. <u>Gowesky v. Singing River Hosp. Sys.</u>, 321 F.3d 503, 511 (5th Cir. 2003); <u>see also Daigle v. Liberty Life Ins. Co.</u>, 70 F.3d 394, 396 (5th Cir. 1995).

Under this burden-shifting scheme, the plaintiff must first make out a prima facie case of discrimination. <u>Gowesky</u>, 321 F.3d at 511; <u>Daigle</u>, 70 F.3d at 396. In response, the defendant must articulate a legitimate, nondiscriminatory reason for the action that adversely affected the employee. <u>Gowesky</u>, 321 F.3d at 511; <u>Daigle</u>, 70 F.3d at 396. If the employer offers some evidence to support the stated nondiscriminatory reasons for discharge, the plaintiff must offer evidence of pretext or mixed motives. <u>Gowesky</u>, 321 F.3d at 511; <u>McInnis v. Alamo Cmty. Coll. Dist.</u>, 207 F.3d 276, 279 (5th Cir. 2000).

In order to establish a prima facie case of disability discrimination under the ADA, the plaintiff must first show that she: (1) had a disability; (2) was qualified for the job in question; (3) experienced an adverse employment decision due to her disability; and (4) was replaced by a non-disabled individual or

was treated less favorably than non-disabled employees.  <u>Amsel v.</u>
<u>Tex. Water Dev. Bd.</u>, Fed. App'x 395, 399 (5th Cir. 2012) (citing
<u>Daigle</u>, 70 F.3d at 396.  The ADA defines disability as "(A) a
physical or mental impairment that substantially limits one or more
major life activities of [the employee]; (B) a record of such an
impairment; or (C) being regarded as having such an impairment."
42 U.S.C.A. § 12102(1); <u>see</u> <u>Rodriquez</u>, 436 F.3d at 474; <u>Hamilton</u>
136 F.3d at 1050.

**2.  Prima Facie Case**

Defendant moves for summary judgment on Plaintiff's ADA
discrimination claim on the grounds that: (1) Plaintiff cannot
establish a prima facie case of ADA discrimination; and (2) even if
Plaintiff could establish a prima facie case, Plaintiff has failed
to rebut Defendant's legitimate, nondiscriminatory reason for
terminating Plaintiff.  Because the court finds Defendant's first
argument dispositive, it need not address the second argument.

Defendant challenges Plaintiff's ability to satisfy the final
element of a prima face case of disability discrimination, namely,
that Plaintiff was replaced by a non-disabled individual or was
treated less favorably than non-disabled employees.  In response,
Plaintiff states that she was replaced by O'Donnell, a non-disabled
employee.[61]  However, Plaintiff has not produced any competent

---

[61]    Plaintiff does not argue that she was treated less favorably than
other non-disabled employees.

summary judgment evidence to support her assertion that O'Donnell was not disabled.  Plaintiff merely points to O'Donnell's resume as evidence that O'Donnell was not disabled.  This document does not indicate in any way that O'Donnell was or was not disabled. Therefore, in the absence of any competent evidence that O'Donnell was not disabled, the court finds that Plaintiff has failed to satisfy her prima facie burden.  The court accordingly **RECOMMENDS** that summary judgment in favor of Defendant be **GRANTED** on Plaintiff's ADA discrimination claim.

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED IN PART, DENIED IN PART.** Plaintiff asserts that she also pled claims under the ADA for failure to accommodate and retaliation.  The merits of these claims are not presently before the court.[62]

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

---

[62]   Defendant did not move for summary judgment on Plaintiff's failure-to-accommodate and retaliation claims under the ADA in the pending motion. Instead, Defendant argued in favor of dismissal of these claims only in its reply to Plaintiff's response opposing summary judgment.  A reply is not the proper place for asserting new arguments for summary judgment.

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>21st</u> day of June, 2013.

Nancy K. Johnson
United States Magistrate Judge

24